IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMEL M. FORD,

                 Petitioner,

    v.

THERESA DELBALSO, et al.,

                 Respondents.

CIVIL ACTION
NO. 18-752

## OPINION

**Slomsky, J.**                                              **February 10, 2021**

## I.   INTRODUCTION

Before the Court is a pro se Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 29) filed by Petitioner Jamel M. Ford ("Petitioner"), a state prisoner incarcerated at State Correctional Institution ("S.C.I") at Mahanoy in Schuylkill County, Pennsylvania.  (See id. at 3.)  On July 30, 2020, United States Magistrate Judge David R. Strawbridge issued a Report and Recommendation ("R&R"), recommending that the Amended Petition be denied and dismissed and that a certificate of appealability should not be issued.  (See Doc. No. 40 at 24.)  On August 24, 2020, Petitioner filed Objections to the R&R (the "Objections"). (Doc. No. 43.)  For the reasons discussed infra, the Court will approve and adopt the R&R (Doc. No. 40), deny the Amended Petition (Doc. No. 29), and will not issue a certificate of appealability.[1]

---

[1]   For purposes of this Opinion, the Court has considered Petitioner's Amended Habeas Corpus Petition (Doc. No. 29) and its claims incorporated from his initial Petition (Doc. No. 1), Respondents' Response in Opposition to the Amended Petition (Doc. No. 32), Petitioner's Reply (Doc. No. 38), the Report and Recommendation (Doc. No. 40), Petitioner's Objections to the Report and Recommendation (Doc. No. 43), and the pertinent state court record.

## II.    BACKGROUND

The facts of Petitioner Ford's case are summarized as follows:

On December 5, 2006, around 11:10 p.m., while walking at Emerald and Ontario Streets in Philadelphia, Jamal Wright and Stephanie Wilcox conversed with Haneef Dyches, who was also known as "Neef" and "Neef Bucks."  Ford approached on foot, acknowledged Wright and Dyches, and followed Dyches across Ontario Street.  As Wright and Wilcox followed, Ford abruptly pulled a gun from his pocket and shot Wright in the head, causing Wright to fall to the ground.  Ford shot Wilcox in the right side of her face, and then shot Wright again in the chest as Wright lay motionless on the ground.  Wilcox ran down the block, hid, and called emergency services.  Dyches began to walk away, heard a click, and looked back over his shoulder.  Ford, with his gun aimed at the back of Dyches' head, told Dyches ". . . you ain't seen nothing" and then left the area.  Luis Rivera, who was inside his residence on the 2000 block of Emerald Street, heard the three shots, looked out the window, saw Ford and Dyches walking in opposite directions, and saw Wright's body lying on the sidewalk.

Police arrived, sought medical treatment for Wilcox, secured the area, and recovered three (3) fired .380 caliber casings from the ground next to Wright's body, which were analyzed by a ballistics expert and were found to exhibit similar firing characteristics.  Wright was already dead and police recovered the following items from his body: a semi-automatic Tec-9, 9 millimeter pistol, which was in Wright's waistband; forty dollars ($40.00); a cell phone; and a bag containing ten (10) crack cocaine packets.  Ballistics analysis indicated that the Tec9 was operable, contained no cartridges, and did not fire the .380 caliber casings.

Medical Examiner Bennett Preston, M.D., performed Wright's autopsy, which confirmed that Wright was shot in the right side of his head at close range, e.g., six inches from the gun barrel, that Wright sustained head injuries, e.g., terminal fall injuries, which were likely incurred when he fell after he was shot in the head, that Wright was also shot in the chest from a slightly more distant range, that the cause of Wright's death was multiple gunshot wounds, and that the manner of Wright's death was homicide.

Wilcox was hospitalized for four (4) days for a shattered jaw, eight (8) shattered teeth, and severe lacerations to her face, mouth, and tongue, all of which required reconstructive surgery.  She could not eat or speak normally for nearly eight (8) months due to a metal fixation device on her exterior jaw.  Wilcox's jaw cannot be fully reconstructed, eight (8) teeth remain missing, and she still suffers facial numbness and scarring.

An investigation ensued, during which Wilcox and Dyches gave statements and, when shown an array with Ford's photograph, separately identified Ford, who they know as 'Face,' as the shooter; Wilcox also identified Dyches, by photograph, as

the eyewitness.  A warrant for Ford's arrest was issued, but Ford could not be located and federal authorities were notified that Ford was a fugitive.

On February 7, 2007, Ford was detained in Atlanta, Georgia as a possible fugitive. Atlanta Homicide Investigator Brett Zimbrick, preliminarily asked Ford if he was wanted in Philadelphia and Ford, who appeared sober, responded affirmatively, admitted that he shot a man in December 2006.  Ford received and waived Miranda warnings and gave a statement to Investigator Zimbrick, which was videotaped, in which he admitted that he shot Wright and Wilcox, claimed that Wright had robbed him of drugs and money earlier that day, and claimed that, just before he shot Wright, he believed Wright was pulling out a gun.  Ford was transported to Philadelphia, arriving on February 20, 2007, and was brought to the Philadelphia Homicide Unit and interviewed by Detective William Sierra.  Ford received and waived Miranda warnings and gave a second statement, memorialized in writing, therein admitting that he shot Wilcox and Wright on December 5, 2006, claiming that he did so after Wright pulled out a gun, and also claiming that, in the course of that same day, he had a couple of drinks, he was robbed by Wright, he purchased 'wet' or PCP, and he made various cocaine sales.

On April 25, 2007, Dyches testified at Ford's preliminary hearing in this case.  On that day and for the next six (6) months, Dyches was in custody for an unrelated case and was housed at the Philadelphia Detention Center ("PDC"), cellblock "G".

On occasion, inmates housed in separate cellblocks at the Detention Center are able to interact with each other in the kitchen, church, medical center, and gym.

On August 3, 2007, as Philadelphia Corrections Officer Chi Haliburton, an officer with fourteen years experience, was on duty at the Philadelphia Detention Center and was inspecting incoming mail, her suspicious [sic] were aroused by a letter postmarked "August 2, 2007," which was addressed to Jamal Bowens, an inmate housed in the "D" cellblock, with a return address of ["]Rel-Rel, 2528 North 15th Street, Philadelphia, Pennsylvania, 19132[.]"  The writer, who identified himself in the letter as "Terrell Bowens, PP Number 968912, 7901 State Road, Philadelphia," requested that Jamal Bowens "take care" of "some bull on your block name Neef Buck . . . that n*gga ratting on my folks . . . Bang that n*gga the fuck out or fuck that n*gga up . . . Make that n*gga check on P.C. [protective custody]," and enclosed a copy of Dyches' statement in this matter, which was modified with a superimposed copy of Dyches' police photograph.

Police investigation revealed that Terrell Bowens resided at 2528 North 15th Street in Philadelphia, had a matching Police Photograph Number/PP Number, was in custody at the Curran Fromhold Correctional Facility ("CFCF"), 7901 State Road, Philadelphia, and was housed in Ford's cellblock.  A search of Terrell Bowens' cell by prison personnel led to the recovery of, inter alia, correspondence addressed to "Rel-Rel," while a search of Ford's cell led to the recovery of, inter alia, Dyches' photograph.

On August 10, 2007, Ford received and waived Miranda warnings and gave a third statement, in which he admitted that he had given Dyches' photograph to "people on my block, to know who is snitching" and that he had "a guy . . . in the Law Library" make the superimposed photocopy of Dyches' photograph and statement.

(Doc. No. 40 at 1-4) (citations and footnotes omitted) (quoting Com. v. Ford, No. 1686 EDA 2009, 15 A.3d 542 (Table) (Pa. Super. Ct. Oct. 26, 2010); (Doc. No. 15 at 45-48)).

Petitioner was prosecuted in the Philadelphia Court of Common Pleas, proceeded to a capital jury trial, and was convicted on February 10, 2009 of first-degree murder, possessing an instrument of crime, two counts of aggravated assault, victim/witness intimidation, attempted murder, criminal solicitation, and criminal conspiracy.  (See id. at 4) (citing Com. v. Ford, No. 2332 EDA 2015, 2016 WL 7103940, at *3 (Pa. Super. Ct. Dec. 6, 2016); (Doc. No. 15 at 74)).  On April 24, 2009, Petitioner was sentenced to life imprisonment for first degree murder and lesser, consecutive terms of imprisonment for all other convictions.  (See id.; Doc. No. 15 at 75-76.)

On June 9, 2009, Petitioner filed a direct appeal, which was affirmed by the Pennsylvania Superior Court on October 10, 2010.  (See Doc. Nos. 40 at 4; 15 at 75.)  Thereafter, Petitioner appealed to the Supreme Court of Pennsylvania.  (See ids.)  On May 3, 2011, the court denied his Petition for Allowance of Appeal.  (See ids.)

On November 1, 2011, Petitioner timely filed a pro se Post-Conviction Relief Act ("PCRA") petition in the Philadelphia Court of Common Pleas, and on June 23, 2014 after being appointed counsel, he filed an amended petition.  (See ids.)  On May 18, 2015, the court filed a Notice of Intent to Dismiss the amended PCRA petition pursuant to Pennsylvania Rule of Criminal Procedure 907, finding that "all of the claims raised by [Petitioner] were previously litigated, waived, or without merit."  (Doc. No. 15 at 75; see also Doc. No. 40 at 4.)  On July 20, 2015, after

denying Petitioner's <u>pro</u> <u>se</u> supplemental PCRA petition,[2] the court formally dismissed his amended petition.  (<u>See</u> Doc. Nos. 40 at 4; 15 at 75.)

Petitioner appealed the dismissal of his PCRA petition to the Superior Court of Pennsylvania on July 29, 2015, which the court affirmed in an opinion issued on December 6, 2016.  (<u>See</u> Doc. No. 40 at 4-5.)  On January 6, 2017, Petitioner then filed a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania.  (<u>See</u> <u>id.</u> at 5.)  On October 24, 2017, the court denied his petition.  (<u>See</u> <u>id.</u>)

On February 20, 2018, Petitioner filed a <u>pro</u> <u>se</u> Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. No. 1) in the Eastern District of Pennsylvania, and on July 15, 2019, Petitioner filed an Amended Petition (Doc. No. 29), incorporating the claims in his initial Petition and adding one more claim.  (<u>See</u> Doc. No. 40 at 5.)  In total, Petitioner asserts eleven (11) grounds for relief in the Amended Petition:

> He asserts that counsel was ineffective for failure to (1) challenge deprivation of counsel at a "critical stage";  (2) investigate a self-defense claim;  (3) "properly argue" a motion to suppress;  (4) request a limiting instruction on the use of "other crimes" evidence;  (5) challenge "prejudicial" closing argument;  (6) "retain a mental health expert";  (7) present Petitioner's testimony;  (8) seek exclusion of Ford's second statement to police as resulting from "duress";  (9) challenge Petitioner's sentence;  (10) seek exclusion of statement to police as it was "involuntary"; and  (11) challenge sentencing statute as unconstitutional.

(<u>Id.</u>)  On August 15, 2019, Respondents filed a Response to the Amended Petition (Doc. No. 32), and on June 22, 2020, Petitioner filed a Reply (Doc. No. 38).

On July 30, 2020, Magistrate Judge David R. Strawbridge issued a Report and Recommendation ("R&R") recommending that the Amended Petition be denied and dismissed.

---

[2]   Petitioner Ford, acting <u>pro</u> <u>se</u>, filed a supplemental PCRA petition on June 24, 2015.  (<u>See</u> Doc. Nos. 40 at 4; 15 at 75.)  The court, however, did not consider this supplemental petition because judicial policy barred "hybrid representation," since Petitioner was represented by counsel at the time he filed the supplemental petition.  (<u>See</u> <u>ids.</u>)

(Doc. No. 40.)  On August 24, 2020, Petitioner filed Objections to the R&R (Doc. No. 43), which are now before this Court for review.

## III.    STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge is permitted to designate a magistrate judge to make proposed findings and recommendations on petitions for post-conviction relief.  Any party may file objections in response to the magistrate judge's Report and Recommendation.  § 636(b)(1)(C).  Whether or not an objection is made, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  Id.  "The [district] judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions."  Id.  "[I]t must be assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court."  Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987); see also 28 U.S.C. § 636(b).

In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's report and recommendation.  Under the rule, a petitioner must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections."  Savior v. Superintendent of Huntingdon SCI, No. 11-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012).  Upon review, "[a district judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).

De novo review is non-deferential and generally permits the district court to conduct an "independent review" of the entire matter.  Salve Regina College v. Russell, 499 U.S. 225, 238 (1991).  "Although [the] review is de novo, [a district judge] [is] permitted, by statute, to rely upon the magistrate judge's proposed findings and recommendations to the extent [the judge], in the

exercise of sound discretion, deem[s] proper." Owens v. Beard, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

## IV.   ANALYSIS

As noted, Petitioner raises eleven claims for relief in his Amended Petition: ineffective assistance of counsel "for failure to (1) challenge deprivation of counsel at a 'critical stage;' (2) investigate a self-defense claim; (3) 'properly argue' a motion to suppress; (4) request a limiting instruction on the use of 'other crimes' evidence; (5) challenge 'prejudicial' closing argument; (6) 'retain a mental health expert;' (7) present Petitioner's testimony; (8) seek exclusion of Ford's second statement to police as resulting from 'duress;' (9) challenge Petitioner's sentence; (10) seek exclusion of statement to police as it was 'involuntary;' and (11) challenge sentencing statute as unconstitutional." (Doc. No. 40 at 5.) Magistrate Judge Strawbridge recommended the Amended Petition be denied, finding that none of the claims provide grounds for habeas relief because each claim is either procedurally defaulted or was reasonably adjudicated on the merits in state court.[3] (See id. at 23.)

In his Objections, Petitioner only objects to the R&R's resolution of his claims alleging ineffective assistance of counsel for failure to: investigate a self-defense claim ("Claim 2"), properly argue a motion to suppress ("Claim 3"), and request a limiting instruction on the use of "other crimes" evidence ("Claim 4"). (See Doc. No. 43 at 1, 8, 15.) In all three Objections, Petitioner mostly reasserts the same arguments made in his Amended Petition. (See Doc. Nos. 43 at 1-2, 8-11, 15-17; 1 at 10, 13, 15.)

---

[3]   Specifically, Judge Strawbridge found that claims 2, 9, and 11 were procedurally defaulted, and the remainder of the claims—1, 3-8, and 10—were adjudicated on the merits in state court. (See Doc. No. 40 at 9, 23.)

Courts in the Third Circuit have consistently held that objections which "merely rehash an argument presented to and considered by a magistrate judge are not entitled to de novo review." Morgan v. Astrue, No. 08-2133, 2009 WL 3541001, at *3 (E.D. Pa. Oct. 30, 2009) (citing Edmond v. Collins, 8 F.3d 290, 293 n.7 (5th Cir. 1993)) (collecting cases).  Because Petitioner's Objections mostly restate the same arguments made in his Amended Petition that have already been considered by the Magistrate Judge, they are not entitled to a de novo review.  Moreover, the issues Petitioner raises for the first time in his Objections regarding his PCRA counsel are procedurally improper under Eastern District of Pennsylvania Local Rule 72.1IV(c) and cannot be considered.  In the interest of judicial economy, however, the Court will address each Objection in turn.

### A.   Petitioner's First Objection Lacks Merit Because He Did Not Rely Upon the Same Facts Asserted in His Amended Habeas Petition When He Raised the Claim in State Court

In Petitioner's Objection to the Magistrate Judge's resolution of Claim 2 in the R&R, he argues that trial counsel failed to "investigate the facts that the decedent wore a mask on his face and was armed at the time Petitioner killed him . . . . Trial counsel never made any attempts to question Stephanie Wilcox" as to whether the decedent wore a mask or "reach[ed] under his coat," and did not ask Haneef Dyches if the decedent reached under his coat.  (Doc. No. 43 at 2.)  At the end of the Objection, Petitioner adds that "P.C.R.A. counsel is ineffective for not preserving [the mask] issue or briefing as she had full notice."  (Id.)

In the R&R, the Magistrate Judge concluded that Claim 2 was procedurally defaulted because the claim Petitioner raised on PCRA "is not the same as what he asserts here, in that he relies upon different underlying facts to support[] his argument."  (Doc. No. 40 at 10.)  "On PCRA Ford made a general argument pointing to his having been robbed by the decedent Jamal Wright and his girlfriend victim Stephanie Wilcox, and his 'fearing for his life and being accosted again.' . . . Here, for the first time on habeas, Ford presents an argument about an alleged mask that the

decedent was wearing."  (Id.)  Because "[t]he state court did not have a full and fair opportunity

to address this claim[], . . . it is procedurally defaulted."  (Id.)  This Court agrees.

Claims for relief in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 can

only be granted if the petitioner "has exhausted the remedies available in the courts of the State[.]"

§ 2254(b)(1)(A).  A petitioner properly exhausts state court remedies by giving state courts "one

full opportunity to resolve any constitutional issues by invoking one complete round of the State's

established appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  This

ensures that federal courts do not "overturn[] a state court conviction without the state courts

having had an opportunity to correct the constitutional violation in the first instance."  Id. (citations

omitted).  Further, as the R&R explained:

> Where a claim was not properly presented to the state court, the petitioner is
> considered to have defaulted that claim.  See, e.g., Coleman v. Thompson, 501 U.S.
> 722, 749 (1991).  Such a claim cannot provide a basis for federal habeas relief
> unless the petitioner can show "cause for the default and actual prejudice as a result
> of the alleged violation of federal law, or [unless he] demonstrates that failure to
> consider the claims will result in a fundamental miscarriage of justice."  Id. at 750;
> see also Teague v. Lane, 489 U.S. 288, 308 (1988) (plurality opinion); Wainwright
> v. Sykes, 433 U.S. 72 (1976).  To establish cause, the petitioner must show "that
> some objective factor external to the defense impeded [his] efforts to comply with
> the State's procedural rule" in the presentation of the claim to the state court.
> Murray v. Carrier, 477 U.S. 478, 488 (1986).  The fundamental miscarriage of
> justice exception requires that the petitioner supplement his claims with a
> "colorable showing of factual innocence" in order to obtain review of the defaulted
> constitutional claim.  McCleskey v. Zant, 499 U.S. 467, 495 (1991).

(Doc. No. 40 at 7.)

Here, Petitioner alleges ineffective assistance of counsel for failure to investigate a self-

defense claim, supported with facts that he did not present at the state court level.[4]  To overcome

---

[4]   In his Objections regarding Claim 2, Petitioner avers that trial counsel was ineffective for not
investigating a self-defense claim by failing to "investigate the facts that the decedent wore a
mask on his face and was armed at the time Petitioner killed him . . . ."  (Doc. No. 43 at 2)
(emphasis added).  While Petitioner did not present facts regarding the mask in support of this

this procedural default, Petitioner must either show cause for the default or that he will suffer a fundamental miscarriage of justice should the Court fail to consider Claim 2.  But Petitioner has not shown cause for the default in his Amended Petition nor his Objections, as he has not shown some objective, external factor impeded his ability to present facts regarding the mask when raising Claim 2 at the state court level.  See Murray, 477 U.S. at 488.

Furthermore, the fundamental miscarriage of justice exception does not apply here.  The R&R notes the following:

> Ford does not provide any proof to substantiate his allegation that decedent was wearing a mask.  He does not present any affidavit or any evidence for us to consider, nor does the record indicate any evidence of a mask.  Even in his reply brief, he does not address this lack of any evidence to support this assertion.  We therefore have nothing beyond his mere allegation, for the first time on habeas, that this mask existed.

(Doc. No. 40 at 10 n.3.)[5]  Of course, a mere allegation does not amount to a "colorable showing of factual innocence."  McCleskey, 499 U.S. at 495.  Therefore, Petitioner has not shown cause for the default or that the fundamental miscarriage of justice exception applies for this Court to consider his procedurally defaulted claim.

---

claim at the state court level, he did present facts regarding the decedent being armed when he appealed the dismissal of his PCRA petition to the Superior Court of Pennsylvania.  (See Doc. No. 15 at 112) ("At no time was this viable defense investigated by prior trial counsel . . . given all the circumstantial evidence involved where the decedent was armed with the weapon.").

On this basis, Petitioner's Objection regarding Claim 2 is overruled because the claim was reasonably adjudicated on the merits in state court, and "a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).

[5]  The Court notes that, in Petitioner's Objections, he includes photos of the crime scene to support his contention that the decedent was wearing a mask.  (See Doc. No. 43 at 4-5.)  But it is not clear from the photos that the decedent was in fact wearing a mask, and regardless, the Court cannot consider the crime scene photos because Petitioner did not present them to the Magistrate Judge.  See U.S. Dist. Ct. Rules E.D.Pa., Civ Rule 72.1IV(c) ("[N]ew issues and evidence shall not be raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge.").

Lastly, the Court cannot consider the allegation about PCRA counsel because it was not presented to the Magistrate Judge.  See Adkins v. Wetzel, No. 13-3652, 2014 WL 4088482, at *3 (E.D. Pa. Aug. 18, 2014) (citing U.S. Dist. Ct. Rules E.D.Pa., Civ Rule 72.1IV(c)) ("[N]ew issues and evidence shall not be raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge.").  Accordingly, for all the above reasons, Petitioner's Objection to the R&R's resolution of Claim 2 is overruled.

### B.    Petitioner's Second Objection Lacks Merit Because State Courts Reasonably Determined Trial Counsel Was Not Ineffective in Arguing Petitioner's Motion to Suppress

In Petitioner's Objection to the Magistrate Judge's resolution of Claim 3 in the R&R, he maintains that trial counsel's performance was deficient in how he handled a motion to suppress "during pretrial investigations."  (Doc. No. 43 at 8.)  Petitioner asserts that "[t]rial counsel failed to do a thorough investigation or make any competent legal argument into Petitioner's Fourth Amendment violation."  (Id. at 10.)  Specifically, he argues that "[c]ounsel failed to investigate, introduce and properly argue evidence of Petitioner being a pretrial detainee who did have a Fourth Amendment expectation to privacy[]" in his jail cell.  (Id. at 8.)  While Petitioner acknowledges that pretrial detainees have a "limited" expectation of privacy, he maintains his expectation of privacy was "strong enough to challenge a search that violates his Fourth and Fourteenth Amendment rights because the search in question was not initiated by prison officials for security or penological interest . . . ."  (Id.)

In the R&R, the Magistrate Judge found that, to the extent Petitioner was "seeking review of his Fourth Amendment claim[,]" the court could not provide review because "[a] Fourth Amendment claim is not cognizable on habeas review."  (Doc. No. 40 at 15) (citing 28 U.S.C. § 2254(a)).  And "[t]o the extent that [Petitioner] is arguing that counsel was ineffective" in arguing the alleged Fourth Amendment violation, this claim was "reasonably adjudicated by the state

11

court." (Id. at 15, 23.)  Petitioner refutes this in his Objection and argues that Claim 3 is cognizable on habeas review because "[r]estrictions on habeas review of Fourth Amendment claims [are] not applicable to Sixth Amendment claims that assistance of counsel was ineffective because of incompetent representation on Fourth Amendment issues."  (Doc. No. 43 at 8) (citing Kimmelman v. Morrison, 477 U.S. 365 (1986)).

Habeas corpus petitions "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings" unless adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); see also Shinn v. Kayer, 141 S. Ct. 517, 520 (2020) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)) ("When a state court has applied clearly established federal law to reasonably determined facts in the process of adjudicating a claim on the merits, a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'").

In Stone v. Powell, the Supreme Court restricted federal habeas review of Fourth Amendment claims "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim[.]"  428 U.S. 465, 494 (1976).  Ten years later in Kimmelman v. Morrison, the Court held that the restriction did not apply "to Sixth Amendment claims of ineffective assistance of counsel where the principal allegation and manifestation of inadequate representation is counsel's failure to file a timely motion to suppress evidence allegedly obtained in violation of the Fourth Amendment."  477 U.S. at 368.

The search and seizure at issue in this case is summarized in the R&R as follows:

The search was initiated after corrections officers discovered a letter sent from Ford's codefendant Terrell Bowens to Bowens' cousin.  (Doc. 15 at 73).  A

12

Philadelphia corrections officer was inspecting incoming mail at the Philadelphia Detention Center.  (Id.).  The officer discovered a letter that she deemed to be suspicious.  (Id.).  The letter was addressed to Jamal Bowens, who was housed at the Philadelphia Detention Center and was sent from Terrell Bowens, who was housed at the Curran Fromhold Correctional Facility.  (Id.).  The letter instructed Jamal to "take care" of "Neef Buck," which is a nickname of Commonwealth eyewitness Haneef Dyches, for "ratting on my folks."  (Id.).  It also included a copy of Dyches' police statement, which was superimposed with a photograph of Dyches.  (Id.).  Dyches was also housed in the Philadelphia Detention Center at that time on an unrelated offense.  (Id.).  After this piece of mail was discovered, police searched both Ford and his co-defendant Bowens' prison cells.  (Id.).  During that search officers found and seized a photograph of Dyches in Ford's cell and a copy of Dyches' statement in Bowens' cell.  (Id.).

(Doc. No. 40 at 14.)  Based on these facts—and unlike counsel in Kimmelman—Petitioner's trial counsel filed and argued a motion to suppress the evidence seized from Petitioner's jail cell and "also raised the admissibility of this evidence on direct appeal."  (Id.; see also Doc. No. 15 at 86.) The Superior Court on direct appeal found no Fourth Amendment violation because "officials legitimately searched and seized evidence of suspected criminality."  (Doc. No. 15 at 55.)  Based on the above facts, the court concluded that "the police, after investigating the letter had reason to suspect criminal activity."  (Id.)  Then, relying upon its rationale on direct appeal, the court on PCRA review held that "th[e] claim fails[]" and described Petitioner's claim as "his dissatisfaction with the trial court's ruling on his suppression motion . . . ."  (Doc. Nos. 40 at 14; 15 at 86.)

Petitioner nevertheless contends in his Objection that the "[t]rial court's ruling was improper where trial counsel presented no support that Petitioner enjoyed a Fourth Amendment expectation to privacy."  (Doc. No. 43 at 9.)  He claims that "[t]he state applied Hudson v. Palmer, 468 U.S. 517 (1984) to refute Petitioner's standings that he had a[n] expectation to privacy and forclose [sic] this issue[,]" and points to United States v. Clark, Nos. 3-99-086(1)-(2), 2002 WL

31368933 (S.D. Ohio Oct. 2, 2002) to suggest improper reliance upon <u>Hudson</u>.[6]  (<u>Id.</u>) (citing <u>Clark</u>, 2002 WL 31368933, at *4) (citation omitted) ("[I]f a pretrial detainee was subjected to a cell search not even colorably motivated by institutional security concerns, then surely <u>Hudson</u> should not be treated as foreclosing [a] challenge of that search[.]").

But as the court on direct appeal explained, there were legitimate institutional security concerns that motivated and prompted the search of Petitioner's jail cell.  (<u>See</u> Doc. No. 15 at 55.) The court affirmed the same on PCRA review, finding "that counsel was not ineffective for his approach in arguing th[e] suppression motion" since "there was no Fourth Amendment violation[.]"  (Doc. No. 40 at 16) (citing Doc. No. 15 at 86).  As such, this Court finds that the state courts reasonably adjudicated Claim 3 on the merits and did not engage in an "unreasonable determination of the facts in light of the evidence presented . . . ."  28 U.S.C. § 2254(d). Accordingly, Petitioner's Objection to the R&R's resolution of Claim 3 is overruled.[7]

---

[6]    While Respondents cited <u>Hudson</u> in their Response in Opposition to the Petition for a Writ of Habeas Corpus (<u>see</u> Doc. No. 15 at 23), the Superior Court on direct appeal and on PCRA review did not cite the case.  In addressing Claim 3 on direct appeal, the Superior Court instead quoted the following from <u>Com. v. Wallington</u> when discussing Petitioner's right to privacy in his jail cell:

> [T]he Fourth Amendment's freedoms are justifiably limited, in the prison environment, to the extent that officials may search prisoners and seize contraband or evidence of suspected criminality.  Otherwise-recognized safeguards of the Fourth Amendment are not cognizable unless and until such searches and seizures be solely for the purposes of harassment.  We recognize that a definite and hard-fixed standard is not explicit from our decision; but it cannot be when we are dealing with important concepts of Constitutional law, where factual nuances can alter the legal conclusions upon such concepts from case to case.

(Doc. No. 15 at 54) (quoting <u>Com. v. Wallington</u>, 357 A.2d 598, 600 (Pa. Super. Ct. 1976)).

[7]    Similar to his Objection regarding Claim 2, Petitioner adds at the end of his Objection regarding Claim 3 that PCRA counsel was ineffective due to "her briefing of this issue in her Petition to the court[,]" which "caused her to fail Petitioner by not knowing the facts . . . ." (Doc. No. 43 at 11.)  As stated in Section IV.A, <u>supra</u>, because this allegation about PCRA

**C.     Petitioner's Third Objection Lacks Merit Because State Courts Reasonably Determined Trial Counsel Was Not Ineffective for Not Requesting a Limiting Instruction on the "Other Crimes" Evidence**

In Petitioner's Objection to the Magistrate Judge's resolution of Claim 4 in the R&R, he takes issue with trial counsel's failure "to request a limiting instruction" on the Commonwealth's use of "other crimes" evidence at trial.  (Doc. No. 43 at 15.)  The "other crimes" evidence was elicited at trial "through testimony of Commonwealth[] witness Detective Brett Zimbrick," when he testified that "Petitioner was en route to complete a drug deal with a person who called him to buy drugs when he was engaged by the decedent, Jamal Wright."  (Id.)  Although Petitioner concedes "one of the recognized situations in which other crimes evidence may be admitted is applicable here[,]"[8] he contends that "the potentially unfair impac[t] of such testimony[]" must be accompanied "with an instruction explaining the limited purpose for which it has been admitted." (Id. at 15-16.)

When addressing the merits of ineffective assistance of counsel claims on habeas review, the "clearly established federal law" applicable to such claims is the familiar two-pronged inquiry articulated by the U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  See Williams v. Taylor, 529 U.S. 362, 363 (2000).  In Strickland, the Court held that to prevail on an ineffective assistance of counsel claim, a petitioner must meet two requirements: (1) he must show "that counsel made errors so serious" that were "outside the wide range of professionally

---

counsel was not presented to the Magistrate Judge, this Court cannot consider it.  See Adkins v. Wetzel, No. 13-3652, 2014 WL 4088482, at *3 (E.D. Pa. Aug. 18, 2014) (citing U.S. Dist. Ct. Rules E.D.Pa., Civ Rule 72.1IV(c)) ("[N]ew issues and evidence shall not be raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge.").

[8]     "Commonwealth witness Zimbrick testified that Petitioner provided a statement in which he was en route to sell drugs when the decedent was shot . . . . Thus, the evidence was admissible to explain the sequence of events."  (Doc. No. 43 at 15.)

competent assistance[;]" and (2) he "must show that the deficient performance prejudiced the defense" and was "so serious as to deprive [him] a fair trial." Strickland, 466 U.S. at 687-690.  In reviewing these claims, a court must defer to counsel's tactical decisions, thereby avoiding "the distorting effects of hindsight." Id. at 689.  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal citation omitted).

When a federal court reviews the state court's rejection of a petitioner's ineffective assistance of counsel claim pursuant to 28 U.S.C. § 2254, it must be "highly deferential" to the state court's decision unless the decision is contrary to clearly established federal law, or it is objectively unreasonable. See Renico v. Lett, 559 U.S. 766, 773 (2010); Yarborough v. Gentry, 540 U.S. 1, 4 (2003) (review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas.").  "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly." Bell v. Cone, 535 U.S. 685, 699 (2002) (citation omitted).  Rather, a petitioner must demonstrate that the state court decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified" under Strickland. Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000) (citing Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999)).

Here, the state courts reasonably adjudicated Claim 4 on the merits and determined that trial counsel was not ineffective for not requesting a limiting instruction. The R&R first noted that the "'other crimes evidence' that was presented at trial . . . was derived from [Petitioner's] own statement . . . to police that he was on his way to conduct a drug sale at the time the victim was shot." (Doc. No. 40 at 16.)  The R&R then states:

16

> On PCRA review the court explained that the voluntariness of Petitioner's statement that referenced drug activity "was raised, reviewed, and rejected on direct appeal, appellant's statements were admissible." . . . The court concluded that "counsel cannot be deemed ineffective for failing to request a limiting instruction for the statements appellant made in his voluntary confession which were subsequently admitted into evidence and used against him."

(Id.) (citing Doc. No. 15 at 88.)  Moreover, "[w]hile the superior court on PCRA review did not go into detail as to why counsel was not ineffective for failing to request a limiting instruction, the PCRA opinion went into greater detail."  (Id.)  The PCRA opinion found that Petitioner "failed to prove that his counsel's conduct had no objective, reasonable basis[,]" explaining that "it is objectively reasonable that [Petitioner's] counsel would not seek to draw attention to [Petitioner's] criminal involvement with the sale of drugs by requesting a limiting instruction at trial."  (Id. at 16-17) (internal quotations omitted) (citing Doc. No. 15 at 141.)

As such, the state courts' resolution of Claim 4 was reasonable and in accordance with federal law.  This court "cannot say that the state court engaged in an unreasonable application of Strickland, where the court based its decision that counsel was not ineffective on finding that Ford had not overcome the presumption that counsel had a strategic purpose."  (Id. at 17) (citing Strickland, 466 U.S. at 689).  Accordingly, Petitioner's Objection to the R&R's resolution of Claim 4 is overruled.[9]

## V.    CONCLUSION

For the foregoing reasons, the Court will adopt Magistrate Judge Strawbridge's Report and Recommendation (Doc. No. 40) and will deny Petitioner Ford's Amended § 2254 Petition for a

---

[9]    Once again, Petitioner adds at the end of his Objection regarding Claim 4 that PCRA counsel was ineffective "for giving the Petitioner the wrong information with respect to filing responses to the 907 notice" and "for failing to raise, present, and preserve this claim."  (Doc. No. 43 at 17.)  This allegation about PCRA counsel was not presented to the Magistrate Judge; therefore, the Court cannot consider it.  See supra note 7.

Writ of Habeas Corpus (Doc. No. 29).  No certificate of appealability shall issue.  An appropriate

Order follows.